## In re J. G. REICHARD & BRO., Inc.

(District Court, E. D. Pennsylvania. February 12, 1916.)

### No. 5143.

BANKRUPTCY ☞323—CLAIMS—RIGHTS OF SECURED CREDITORS.

Bankr. Act July 1, 1898, c. 541, § 57a, 30 Stat. 560 (Comp. St. 1913, § 9641), provides that proof of claim shall consist of a verified statement of the claim, and whether any securities are held therefor. Section 57e provides that claims of secured creditors may be allowed to enable the creditors to participate in creditors' meetings, but for such sums only as are owing above the value of their securities. Section 57h provides that the value of securities held by secured creditors shall be determined as therein stated, that the amount shall be credited upon such claims, and that a dividend shall be paid only on the unpaid balance. A bank held a bankrupt's note, secured by the pledge of corporate bonds, which were secured by a mortgage on real estate, the legal title to which was in M., which was only another name for the bankrupt. The bank sold the bonds to itself for a nominal price, agreeing in advance to still hold them in pledge, and to hold the real estate in mortgage for the debt. By agreement with M. it took legal title to the real estate and surrendered the bonds for cancellation. *Held*, that it still remained a pledgee or mortgagee, and was only entitled to prove its claim against the estate for the deficiency, after applying the proceeds of a sale of the real estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513; Dec. Dig. ☞323.]

In Bankruptcy. In the matter of J. G. Reichard & Bro., Incorporated, bankrupt. On petition for review of order of referee. Order confirmed, and petition for review refused.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. A. & James Balph, of Pittsburgh, Pa., for petitioner.

Claude T. Reno and James L. Schaadt, both of Allentown, Pa., for trustee.

DICKINSON, District Judge. The court allowed the parties until February 11, 1916, to file paper books. The propriety of the order made by the referee is so clearly shown by the opinion accompanying the order that no further discussion would be of any value. The order as made fits the occasion for its issuance.

By sections 56a and 57e of the Bankruptcy Act secured creditors are permitted to participate in the bankruptcy proceedings as creditors, but only as creditors for the sum which the court finds to be due them over and above the value of the securities which they hold. In the proof of claim section 57a requires such creditors to set forth, along with a statement of the debt, a statement of what securities are held. Section 57h limits the claim of such creditors to the amount of the debt less the sale or agreed value of the securities. In addition, the creditor preserves his right to rely upon his security and withhold any claim to share in the assets of the bankrupt estate.

The claim to which the above provisions of the Bankruptcy Law apply is that of the Monongahela National Bank of Pittsburgh. The bank had what, for the purposes of a ruling of the questions involved in this case, we will call a claim for $40,000. The claim was based upon a note of the bankrupt, which was accompanied with the pledge of bonds of the Standard Leather Company as collateral. There were 75 of these bonds, of the par and nominal value of $1,000 each. The payment of the bonds was secured by a mortgage of its real estate, etc., in the form usual in corporate loan transactions. The bank had the legal title to the bonds, and a man by the name of Meilly held the legal title to the real estate. Meilly is found by the referee to be only another name for the bankrupt. The bank took the legal title to the real estate and surrendered the bonds for cancellation. The mortgage given to secure the bonds was then satisfied. By the expression "legal title" we mean that on the face of the papers the holder of the title was the absolute owner, but only on the face of the papers. The bank was really a mortgagee. Before the conveyance above mentioned it was a pledgee of the bonds. After the conveyance it was a mortgagee of the real estate. Upon payment of the debts due to it, all its interest in the bonds, or in the real estate substituted for it, is gone.

This change or substitution was made by means of a private sale to itself of the $75,000 of bonds for the nominal price of $75; it agreeing in advance to still hold the bonds in pledge and the real estate in mortgage for its original debt. We have designated the sale as "private." This, in fact, it was, although in form, but not actually, it was public. A public sale was advertised. The sale was privately adjourned to a later date, and then the forms of a sale were gone through. No one was at the sale, except the parties to the agreement. Perhaps "secret" would be a more appropriate word. The bank then presented its claim against the bankrupt estate for its full claim, exceeding $40,000, less some $47.50, representing the $75 nominal purchase price

after deducting expense charges. The position of the bank was then precisely what it had been. It had before held the (in form) absolute title to property. Its real position was that of pledgee. It now holds the (in form) absolute title to property. Its real position is still that of pledgee, or, what is the same thing, mortgagee. The only difference is in the form of the property. First it was bonds secured by a mortgage of real estate. Now it is the real estate described in the mortgage. It was before its right to prove any debt due it in excess of the security held. The referee has conceded it a like right now.

Exception has been taken to the use of some expressions in the opinion of the referee. The language of the opinion itself is temperate and restrained. The expressions referred to occur only in the citations from other adjudged cases. The expressions "bona fide," "mala fide," "fraud," and equivalent terms, are employed in their legal, and not their ethical, sense. As applied to the facts of this case, they merely mean that the sale through and by which the title of the bank to the bonds was changed to a like title to the real estate was a sale had merely as a mode of conveyance, and not as a test of value, or for the purpose of transmuting the property into money and substituting the purchase-price moneys in place of the property. The only right which the bank has (and this it frankly avows) is to receive the amount of its just claim. When it receives this it has no further interest in the property and is entirely willing to surrender it. If the property is worth this sum, the bank is paid in full. If the property is worth less, the utmost right the bank has is a claim against the bankrupt estate for the shortage. This right the referee has preserved to it.

The argument of counsel for the bank is built upon a misapprehension of the views of the referee. There was no finding of "actual fraud." This feature has already been touched upon. The referee is clearly right in viewing the real security which the bank holds and has held to be the land. When either situation is analyzed this results. When the value of the security has been determined by a sale or otherwise in the manner directed by the act, claim may be made for the balance due. That was not this case. If a pledged security belongs to a third party, the claim may be proven in relief of the pledge. That again is not this case. It could scarcely be pretended that the bank and Meilly could agree the property of the bankrupt estate out of existence. That is what the bank assumed its right to do, through transferring whatever equity there was in the bonds from the estate to Meilly. What the bank did can only be excused on the theory that it did not appreciate what it was doing or what the limit of its rights were. It had only, as has been already several times stated, the right to hold the bonds in pledge. The property, subject to this pledge, was in the hands of the court for administration. In this statement all the legal consequences are summed up. By no process, not having the sanction of the court, could the court be deprived of control of the property over which it had jurisdiction.

We have been asked to modify the order, so as to permit proof of the $2,500 note claim. As we understand the position of this claim, the order made protects it as well as the other. The bank claimed to

hold the bonds as security for this also. The property was sold subject to the mortgage and realized a sum. This implies payment of the bonds. This may not, however, bring the bank its money. The Bankruptcy Law provides the means, indicated by the referee, for protecting the bank in all its rights. It has only to follow the path pointed out to secure all which rightfully belongs to it.

The findings of the referee are approved, the order made by him is confirmed, and the petition for review refused.